## PEOPLE OF STATE OF NEW YORK v. WALSH et al.

### No. 4036.

District Court, E. D. New York.

Aug. 17, 1929.

Elvin N. Edwards, Dist. Atty., of Mineola, N. Y., and Richard H. Brown, Asst. Dist. Atty., of Valley Stream, L. I., N. Y., for the People of State of New York.

Howard W. Ameli, U. S. Atty., and James E. Wilkinson, Herbert H. Kellogg, and George H. Bragdon, Asst. U. S. Attys., all of Brooklyn, N. Y., for defendants.

CAMPBELL, District Judge.

This is a motion for an order rescinding the writ of certiorari granted herein on the 28th day of June, 1929, and for an order remanding this cause to the County Court of Nassau County.

The defendants were indicted by the grand jury of Nassau county, on June 7, 1929, for an alleged assault upon Howard E. Heddink, which indictment contained two counts, the first charging assault in the first degree, the second assault in the second de-

gree, and were on the same day also indicted by the said grand jury for assault upon Fritz Anderson, which indictment contained two counts, the first charging assault in the first degree; the second charging assault in the second degree.

In both counts of the indictment charging an assault on Howard E. Heddink, the assault is alleged to have been committed by aiming at him loaded firearms, to wit, revolvers.

In the first count of the indictment charging an assault upon Fritz Anderson, the assault is alleged to have been committed by aiming at him loaded firearms, to wit, revolvers; and in the second count the assault is alleged to have been committed by the use of a weapon, instrument, and thing likely to produce grievous bodily harm, to wit, a blackjack.

The defendants were, on June 20, 1929, arraigned upon both indictments in the County Court of Nassau County, and each of them pleaded not guilty to each of said indictments, and the bail of $5,000 as to each of the defendants was continued.

On June 28, 1929, the defendants, under the alleged authority of section 33 of the Judicial Code (28 USCA § 76), and section 28, title 2, of the National Prohibition Act of the United States (27 USCA § 45), presented their petition and supporting affidavits to the court, and thereupon an order was made by the Hon. Clarence G. Galston, a judge of this court, that a writ of certiorari issue therein directed to the County Court of Nassau County, requiring the said court to transmit to this court the records and proceedings in each of said cases.

Which order was obeyed, the writ being issued by the clerk and thereafter served by the United States Marshal of this district.

The facts as alleged in the petition and affidavits upon which said writ of certiorari was granted are, in substance, as follows:

The defendants and petitioners, James Walsh and George Eggleston, were then and at all the times in the petition mentioned agents and employees of the United States, duly appointed and acting under the authority of the Treasury Department, and charged with the duty of enforcing the National Prohibition Act, Act of October 28, 1919 (27 USCA), and also such of the Internal Revenue Laws as relate to the manufacture and sale of intoxicating liquor.

That on the 28th day of May, 1929, the defendant George Eggleston, who at that time was a duly appointed agent of the Prohibition Bureau, and had been such agent for several months, was directed by his immediate superior, Deputy Administrator John W. Inglesby, to proceed to the premises known as 93 Hill street, Elmont, Long Island, within the jurisdiction of this court, and to remain on guard until relieved, over a still which had been discovered on those premises; and, unless otherwise instructed, to return to said premises the following morning, and to continue to do guard duty there until relieved or otherwise instructed. The defendant Eggleston proceeded, as directed, to the premises known as 93 Hill street, at Elmont, Long Island, and remained on guard there during the rest of the 28th day of May, 1929, or until relieved at about 6:00 p. m. The day following, the 29th day of May, to wit, he returned to said premises at 93 Hill street, and continued to do guard duty there, until about 2:00 p. m.

At about 9:00 a. m. on the 29th day of May, 1929, the defendant James Walsh, who was at that time a duly appointed agent in the Prohibition Bureau of the Treasury Department, and who had been such agent for several months, was instructed by his immediate superior, Thomas Maher, to proceed from the headquarters of the Prohibition Administrator at No. 1 Park avenue, Manhattan, with a detail of four workmen in a government owned and operated automobile, first, to the Army Base in South Brooklyn, with a load of seized liquor which the defendant Walsh was instructed to deliver there for safe-keeping, and then to 93 Hill street, Elmont, Long Island, within the jurisdiction of this court. The instructions received by the defendant Walsh from his superior, the said Thomas Maher, were that, upon arriving at 93 Hill street, Elmont, Long Island, he was to engage, with the men under his direction and any others, including prohibition agents who might be there, in dismantling a still, which he was told had been found on the aforesaid premises, and that, after dismantling this still, he and the men under his direction were to load the remnants of said still upon the government owned automobile which was assigned to his use for that purpose, and to take these remnants of the still to the Army Base in South Brooklyn, to be delivered there for safe-keeping.

Pursuant to his instructions, the defendant Walsh, accompanied by four laborers whose names and identity are immaterial to this inquiry, and by one Charles Kohl, government chauffeur, who was also an employee

of the Prohibition Bureau of the Treasury Department, delivered the load of liquor to the Army Base in South Brooklyn, as directed, and then proceeded to the premises known as 93 Hill street, Elmont, Long Island, where he arrived at about 2:00 p. m., and where, among others, he found the defendant George Eggleston.

During the rest of the afternoon and until about 7:15 p. m., the defendants Walsh and Eggleston were engaged upon the premises at 93 Hill street, Elmont, Long Island, in dismantling the aforementioned still, in pouring out the contents of some 68 barrels, more or less, of mash, and two large vats of alcohol, all of which were found on the premises simultaneously with the discovery of the still.

In the course of dismantling the still in question, the clothes of both defendants became strongly impregnated with the odor of alcohol and alcoholic mash, and Walsh's clothes became saturated, when a quantity of alcohol fell on him while trying to dislodge one of the pipes connected with the still.

At about 7:15 p. m., as near as these two defendants can estimate the time, they set out with Chauffuer Kohl, in the aforementioned government owned truck, for the Red Ball Garage at Thirty-First street and Lexington avenue, Manhattan. The truck was loaded with the remnants of the still which the defendants had dismantled, and it was their intention to store the truck over the night in the Red Ball Garage, which is a place where government trucks are habitually stored over night. The Army Base in South Brooklyn, which was the ultimate destination of these defendants with their truckload of still appurtenances, closed at 4:00 p. m., so that these defendants were precluded from delivering their load there that night.

About two miles from the point where these defendants set out to return to Manhattan, to wit, at 93 Hill street, Elmont, Long Island, these defendants, Walsh and Eggleston, and Chauffeur Kohl, stopped to eat at Herman's Restaurant, located at Central avenue and Elmont road. Chauffeur Kohl and the defendant Eggleston entered the restaurant first, leaving the defendant Walsh on the truck to guard it and its load. After about half an hour, Chauffeur Kohl and the defendant Eggleston left the restaurant, returned to the truck, and allowed the defendant Walsh to go into the restaurant for something to eat. Defendant Walsh was in the restaurant about half an hour, and when he returned, all three men boarded the truck,

took seats on the driver's seat, and prepared to resume their journey to the Red Ball Garage at Thirty-First street and Lexington avenue, where they planned to leave their truck and its load for the night. As the truck was about to proceed, a man now known to the petitioners as Fritz Anderson appeared in the front of the truck upon which the defendants and Chauffeur Kohl were seated, and demanded to see Kohl's license, at the same time stating that the truck had backed into his car, and had damaged it. Defendant Walsh, being on the outer right-hand side, got off the truck and started back toward the rear of the truck to see what damage had been done to the other car. Almost immediately, defendant Walsh was set upon by two men, one or the other or both of whom struck him at least once with his fist, and at least once with some metallic instrument, possibly an automobile wrench. Defendant Eggleston followed defendant Walsh off the truck by a few minutes and was also set upon by these two men. He drew his blackjack to defend himself, and, by menacing first one and then the other of these two assailants, was able to drive them off.

A few minutes later two state troopers arrived on the scene, and were immediately recognized as such by defendant Eggleston, who disclosed his identity and also that of Agent Walsh, and explained that, in some way which he did not fully understand, Walsh had been attacked by the two men in question. One of the state troopers approached defendant Walsh by passing around the truck and coming suddenly upon defendant Walsh, who was dazed from the effects of the blows which had struck him, and who took the trooper to be another assailant. To make sure that he was not again to be attacked, defendant Walsh pointed his revolver at the trooper, at the same time asking the trooper who he was, and when the trooper made known his identity and his official position to defendant Walsh, defendant Walsh put away his revolver.

After hearing the version given by defendants Walsh and Eggleston on the one side, and their two assailants on the other, the two troopers requested the defendants Walsh and Eggleston and Chauffeur Kohl to accompany them to the state police barracks. Defendants Walsh and Eggleston protested against leaving the truck on the ground that they were government agents, and that they were intrusted with the care and custody of this truck and its contents, and responsible for its safe delivery to the Army Base, as

per their instructions. The troopers, however, overcame the objections of the defendants Walsh and Eggleston, by agreeing to put a guard over the truck during the absence of the defendants Walsh and Eggleston, and, on this understanding, the defendants Walsh and Eggleston, together with Chauffeur Kohl, accompanied the two troopers to the state police barracks, where they were later placed under arrest.

The defendant petitioners also averred that the acts which they performed on the 29th day of May, 1929, at said Elmont, Long Island, and which said acts were made the basis of the two criminal charges thereinbefore mentioned, were each and all of them official acts which the petitioners were then and there performing under the color of their official duty as agents of the Treasury Department of the United States, and were acts performed by the petitioners while they were attempting to enforce the Revenue and Prohibition Statutes of the United States, and that there were no other acts performed, except those therein set forth, and that there was no other possible basis for the indictment thereinbefore described, except the acts which the petitioners had set forth therein.

The motion is made on the following alleged grounds:

"1. That the affidavits and petitions upon which said writ of certiorari was granted are insufficient in law upon the face thereof.

"2. That the acts charged in the indictments were not done by the defendants under color of the offices of them or either of them or under color of the laws of the United States or on account of any right, title or authority claimed by such officers or either of them or in performance of their duties as such officers.

"3. That this Court is without jurisdiction to hear and determine this cause."

There is no denial of the fact that the defendant petitioners, Walsh and Eggleston, were on the day in question federal prohibition agents.

Section 33 of the Judicial Code, now title 28, section 76, U. S. Code (28 USCA § 76), so much of which as is necessary for consideration at this time, reads as follows: "When any civil suit or criminal prosecution is commenced in any court of a State against any officer appointed under or acting by authority of any revenue law of the United States, or against any person acting under or by authority of any such officer, on account of any act done under color of his office or of any such law," applies to Prohibi-

tion Agents. Maryland v. Soper (No. 1), 270 U. S. 9, 46 S. Ct. 185, 70 L. Ed. 449.

The jurisdiction of the federal court under removal acts depends upon statements made in the petition for removal, verified by the oath of the petitioners. Virginia v. Paul, 148 U. S. 107, 13 S. Ct. 536, 37 L. Ed. 386; Salem & L. R. Co. v. Boston & L. R. Co., Fed. Cas. No. 12,249.

The allegation that they were as prohibition agents guarding and taking to the proper government place of storage the dismantled still and alcohol at the time when they alleged they were assaulted is sufficient to give the court jurisdiction.

The showing by the petitioners required to justify a removal under section 33 of the Judicial Code (28 USCA § 76) was laid down by Mr. Chief Justice Taft, writing for the court, in Maryland v. Soper (No. 1), supra, at page 34 of 270 U. S., 46 S. Ct. 185, 191, where he said: "In invoking the protection of a trial of a state offense in a federal court under section 33, a federal officer abandons his right to refuse to testify because accused of crime, at least to the extent of disclosing in his application for removal all the circumstances known to him out of which the prosecution arose. The defense he is to make is that of his immunity from punishment by the state, because what he did was justified by his duty under the federal law, and because he did nothing else on which the prosecution could be based. He must establish fully and fairly this defense by the allegations of his petition for removal before the federal court can properly grant it. It is incumbent on him, conformably to the rules of good pleading, to make the case on which he relies, so that the court may be fully advised and the state may take issue on a motion to remand."

In my opinion the defendant petitioners have complied with these requirements.

The assistant district attorney for Nassau county makes a point that no mention is made in the petition of the conviction and sentencing of the chauffeur, Kohl, for violation of section 70, subd. 5, of the Vehicle and Traffic Law (Laws N. Y. 1929, c. 54), driving a motor vehicle while intoxicated, but it does not seem to me to be of moment in these proceedings, as he was convicted and sentenced on June 5, 1929, and the petition was not filed in these proceedings until June 28, 1929, and he was not a party thereto.

In addition, the assistant district attorney of Nassau county seeks to have this court

try out on this motion the very issue which must be submitted to the jury, and that is whether the defendant petitioners were the aggressors in perpetrating the assaults on Anderson and the state trooper, Howard E. Heddink, or were, while guarding the dismantled still and alcohol as government officers, assaulted, and acting in self defense, and as to the state trooper, whether the defendant petitioner Walsh, dazed from blows, failed to recognize the state trooper, and sought to defend himself until the state trooper identified himself.

That as I understand the law is not an issue to be tried on this motion; the question before me is whether the petition is sufficient under the authority of Maryland v. Soper (No. 1), supra.

The petition does set forth fully, and with sufficient detail to make it clear, that, if their petition is true, they were assaulted, and Walsh badly injured, while they were guarding the dismantled still and alcohol as prohibition agents, and they do negative the possibility that they were doing other acts than official acts at the time and on this occasion, and they do make it clear and specific that whatever was done by them leading to the prosecution was done in attempting to protect themselves while acting under color of their federal official duty.

The petition is sufficient. Maryland v. Soper (No. 1), supra.

The charge that the defendant petitioners were intoxicated will be of moment on the trial, but, even if it was a question to be considered at this time, the evidence is not convincing, in view of the fact of their employment while the still was being dismantled, and the fact that the clothes of Walsh were saturated with alcohol from the falling pipe.

The motion is denied.