Ex parte DIERKS.

No. 7000.

District Court, D. Colorado.

Ralph L. Carr, U. S. Atty., of Denver, Colo., for petitioner.

Joel E. Stone, Dist. Atty., and Charles T. Mahoney, both of Denver, Colo., for the State of Colorado.

SYMES, District Judge.

November 13, 1931, Henry Dierks filed his petition in this court, asking for a writ of certiorari and habeas corpus cum causa. Section 33, Judicial Code, section 76, tit. 28 USCA. Briefly, the petition alleges that on the 9th day of November, 1931, a criminal proceeding was commenced against him in the state district court for the First judicial district of Colorado, county of Arapahoe, by the filing of an information charging that the petitioner on the 7th of November, 1931, feloniously, unlawfully, etc., killed and murdered one Melford Smith; that he had been arrested pursuant thereto, admitted to bail, and that said criminal proceeding was still pending, and there had been no trial or final hearing.

He further shows that prior to November 7, 1931, and on that date, he was a federal officer, acting under authority of the revenue laws of the United States, to wit, a prohibition agent, and the act for which he was informed against and held in the state court was performed while engaged in the discharge of his duties as such prohibition agent.

The facts set forth are: That on November 7, 1931, he, together with Prohibition Agent Ellsworth, was directed by his superior to investigate a complaint of violations of the national prohibition law reported as being committed at No. 3005 South Broadway, Englewood, Arapahoe county, Colo.; that pursuant thereto petitioner and Ellsworth proceeded to the said location, a public restaurant, or so-called "hamburger" stand; that he entered, informed the proprietor, or man in charge, that he was a federal prohibition agent, at the same time exhibiting his badge, stating that he had come to investigate alleged violations of the Prohibition Act (27 USCA) on the premises and desired to look around; that the said proprietor, or person in charge, gave permission so to do; that thereupon one Melford Smith, a young man, entered the premises, walked to the rear, and seating himself on an unoccupied stool at the customers' counter, took out a pint bottle of wine from his coat pocket, set it on the counter in full and open view of petitioner, and proceeded to look around for a drinking glass; that petitioner, observing this action and the wine, and believing that said Smith was engaged in violation of the prohibition act and internal revenue laws of the United States, attempted to take possession of the wine and arrest said Smith; that said Smith resisted arrest, attempted to destroy the bottle, and did proceed to assault your petitioner and attempt to escape. Further, that a bystander, one Green, attempted to assist Smith to assault petitioner and to help him to escape, and that in the scuffle that ensued, and while petitioner was engaged in the discharge of his official duties in making, and attempting to make, said arrest of Smith, and protecting himself in the discharge of his duties, and in seizing said wine, it became necessary, in order to subdue said Smith, for petitioner to strike, and he did strike, said Smith on the head with his gun; that thereupon the said prohibition agent Ellsworth came to the assistance of petitioner and they arrested Smith and others who had taken a part in the affray, placed them in jail pending the filing of charges for violation of the prohibition act and for assaulting an officer of the United States; that at the time said Smith was placed in the jail of the city and county of Denver he did not appear to have received any serious injury, but on the following day, after spending a night in jail, he became sick and died. Petitioner is informed—and on information and belief alleges—that said Smith died from an injury to his head, caused by a blow given to said Smith by petitioner during the scuffle aforesaid; that said charge of murder referred to is based entirely upon the circumstances surrounding said injury and subsequent death of Smith as related.

Petitioner further alleges that he is not guilty of the crime of murder, or any other offense under the laws of the state of

Colorado; that said criminal proceeding referred to arises solely out of the acts performed by said petitioner as an officer acting under the revenue laws of the United States, and while acting as United States prohibition agent.

On presentation of the petition this court issued a writ of habeas corpus cum causa, which was served upon the clerk of the state court, and agreeable thereto, the record and proceedings of said cause in the state courts were transmitted here. The matter is now before the court on motion of the state district attorney for the county of Arapahoe to quash the writ and remand the cause.

This motion sets up numerous grounds, but without enumerating them in detail, it may be said that the main contention is that the petition does not bring the case within section 33 of the Judicial Code of the United States (tit. 28, § 76, USCA).

Let us look at the statute: "When any civil suit or criminal prosecution is commenced in any court of a State against any officer appointed under or acting by authority of any revenue law of the United States, or against any person acting under or by authority of any such officer, on account of any act done under color of his office or of any such law * * * the said suit or prosecution may at any time before the trial or final hearing thereof be removed for trial into the district court next to be holden in the district where the same is pending upon the petition of such defendant to said district court and in the following manner." Then follow the procedural steps necessary to transfer the case to the federal court, upon compliance with which the statute states: "It shall be the duty of the State court to stay all further proceedings in the cause, and the suit * * * shall be held to be removed to the district court." It is admitted that the proper procedural steps have been taken both in this court and the state court to remove the cause here. Is the case made covered by this section?

Preliminarily, let us say that a good deal of the argument, and many of the cases cited in support of the motion to remand, are not in point, being based upon sections 451, 452, 453, and 461, tit. 28, USCA, which vest the federal courts, and the judges thereof, with plenary power to issue writs of habeas corpus, and to inquire into the cause of restraint of liberty of any citizen, and to dispose of the party as law and justice require, if he is in custody in violation of the Federal Constitution.

Section 453, supra, provides that the writ of habeas corpus shall extend to a person who is in custody for an act done or omitted pursuant to a law of the United States, etc. And section 461 imposes upon the federal judge the duty to proceed in a summary way to determine the facts by hearing testimony and arguments, and dispose of the party as law and justice require.

The provisions and the remedies afforded by these sections are entirely different from the ones involved here. They give the federal court in a proper case the power to *discharge* the prisoner from custody by the state even before trial, or after trial and conviction, and while serving sentence. This is a far more drastic power than that granted by section 33, supra, because they authorize federal courts to pass upon the guilt or innocence of the petitioner in a proper case, and to free him from prosecution or conviction in the state court.

Such was the question involved in Drury v. Lewis, 200 U. S. 1, page 7, 26 S. Ct. 229, 231, 50 L. Ed. 343, where it is said, quoting from Baker v. Grice, 169 U. S. 284, 18 S. Ct. 323, 42 L. Ed. 748, that: "A person under an indictment in a state court, and subject to its laws, may, by the decision of a single judge of the Federal court, upon a writ of habeas corpus, be taken out of the custody of the officers of the state, and finally discharged therefrom, and thus a trial by the state courts of an indictment found under the laws of a state be finally prevented." See, also, In re Neagle, 135 U. S. 1, 10 S. Ct. 658, 34 L. Ed. 55.

In Ex parte Crouch, 112 U. S. 178, 5 S. Ct. 96, 28 L. Ed. 690, the petitioner was an ordinary citizen charged with a violation of the state law. The court said in discharging the writ that the only question was the sufficiency of his defense to the information under which he was held. There was no claim that he was a federal officer, or acting under the authority of the United States, etc. The Chief Justice specifically stated that its holding had no application to writs of habeas corpus cum causa issued by the courts of the United States in aid of their jurisdiction upon the removal of suits or prosecutions from the state court for trial under the authority of an act of Congress.

Ex parte Royall, 112 U. S. 181, 5 S. Ct. 98, 28 L. Ed. 690, involved nothing more than a question of appellate practice on a writ of habeas corpus. Likewise in Castle v. Lewis (C. C. A.) 254 F. 917, Judge San-

**374**

born was considering said sections 451, 452, 453, and 461, tit. 28, USCA. He held that the federal courts had plenary jurisdiction, thereunder, to inquire into the cause of confinement—where the petitioner alleges he is held in violation of the Constitution, or a law or treaty of the United States—by means of habeas corpus, and to discharge the prisoner in a proper case.

■ Section 33 of the Judicial Code (28 USCA § 76), has nothing in common with the above. The writ provided for is not a true habeas corpus writ. Habeas corpus is directed to a person detaining another, commanding him to produce the body of the prisoner, and to submit to whatever the court or judge issuing the writ shall consider in that behalf. It is a high prerogative writ of the common law, the object of which is the liberation of those who may be imprisoned without sufficient cause.

■ The procedure we are here considering is really the old writ of habeas corpus ad faciendum et recipiendum, which, according to Blackstone, was issued in civil cases to remove the cause, as well as the body of the defendant, from an inferior to a superior court having jurisdiction. Its object is to remove the cause, as explained by Chief Justice Marshall in Ex parte Bollman, 4 Cranch, 75, 2 L. Ed. 554, and all this section authorizes is the removal of the cause to the federal court for trial, as a cause originally commenced in the federal court. The judge issuing the writ does not pass upon, nor is the petitioner's guilt or innocence involved. If sustained the federal court tries the case—in this instance to a jury—on the same information and in the same manner as it would be tried in the state court. In short, this is nothing more than a proceeding to remove a criminal case from the state to the federal court, in the same manner that many other causes are removable from the state to the federal court, and upon a proper showing being made this court has no discretion. The petitioner cannot be denied a right given him by the Congress.

■ The case made by petitioner clearly entitles him to removal. Acting under the authority of a federal revenue law, he was on the premises in question under orders of his superior officers, saw a federal law being violated, and says the death of Smith resulted from a blow received while resisting arrest and assaulting petitioner. This is not denied. Maryland v. Soper, 270 U. S. 9, 46 S. Ct. 185, 190, 70 L. Ed. 449, after holding that this section applies to pro-

hibition agents, says: "It is enough that his acts or his presence at the place in performance of his official duty constitute the basis, though mistaken or false, of the state prosecution." And that: "The defense he is to make is that of his immunity from punishment by the state, because what he did was justified by his duty under the federal law, and because he did nothing else on which the prosecution could be based."

Petitioner negatives the possibility that he was acting otherwise than officially at the time. Whatever he did leading to the prosecution was under color of his official federal duty. Unlike the Soper Case, petitioner admits he brought about the death of Smith.

■ The Attorney General of Maryland rightly argued in the Soper Case that under section 753 (28 USCA § 453), supra, a petitioner must establish, inter alia, his innocence of the crime charged as a condition of his release; that under section 33, supra, it is only necessary to show that the act upon which the prosecution was grounded was done in the probable pursuance of his duties, and within the apparent scope of his authority; that all that is necessary is a prima facie showing that the act was done under the color of office. The phrase "color of office" may cover a claim that later turns out to be groundless, as well as a claim, which upon full investigation is shown to be well founded, and the statute requires only a fair showing that the officer was acting at the time in the probable course of his duty. Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648; Maryland v. Soper, supra.

In that case the Supreme Court, in answer to the direct question certified by the Circuit Court, as to whether an indictment of a revenue officer of the United States, for murder found in the state court under a state of facts alleged in the petition for removal (identical with those in the case at bar), is removable under this section, said (271 of 100 U. S.): "It ought, therefore, to be considered as settled that the constitutional powers of Congress to authorize the removal of criminal cases for alleged offences against State laws from State courts to the circuit courts of the United States, when there arises a Federal question in them, is as ample as its power to authorize the removal of a civil case."

■ The argument is pressed on us that the removal of the case would violate the sovereignty of the state of Colorado and prevent the state from trying persons charged

with the violations of its laws. Such reasoning is plausible but fallacious. We live under a dual sovereignty, that of the national government and the respective states. In adopting the Constitution the states surrendered some of their sovereignty to the federal government. Neither the federal nor the state government is absolutely supreme. There is a division of judicial powers both civil and criminal between the state and national courts, and when a particular state of facts places a case under the powers of the federal government, it of course must assume jurisdiction, and the state cannot complain. Likewise, the federal courts almost daily take notice of the limitations on their powers, by refusing jurisdiction and remanding to the state courts matters beyond their powers, and solely within the jurisdiction of the states.

There can be no conflict of jurisdiction. The judges and officers of the state and federal courts are in duty bound by their oath to observe and respect each other's jurisdiction, and the United States Constitution, and the laws made thereunder, are supreme and binding on both. Tennessee v. Davis, supra, 100 U. S. page 266, 25 L. Ed. 648. In the final analysis both administer the same laws, whether they be enactments of the national Congress or of the state Legislature, and are equally bound to observe the following rule of the Supreme Court (Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 447, 52 L. Ed. 714, 13 L. R. A. [N. S.] 932, 14 Ann. Cas. 764): "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution. Questions may occur which we would gladly avoid, but we cannot avoid them. All we can, do is to exercise our best judgment, and conscientiously to perform our duty." Other pertinent cases are Davis v. South Carolina, 107 U. S. 597, 2 S. Ct. 636, 27 L. Ed. 574; State of Rhode Island v. Richardson (D. C.) 32 F.(2d) 301; People of State of New York v. Walsh (D. C.) 40 F.(2d) 58; Cleveland, Columbus, etc., R. Co. v. McClung, 119 U. S. 454, 7 S. Ct. 262, 30 L. Ed. 465.

State's counsel admit the feeling against petitioner in his district is such that he cannot have a fair trial. That this is in part, at least, the result of the agitation and unfair publicity by the local papers, will not be denied.

It is the paramount duty of a court, above all other considerations, to assure a defendant a fair trial by a jury drawn from a district where such feeling does not exist.

If the Mooney Case, so called, is, as stated by one of our papers, a travesty on justice, and the Sacco-Vanzetti trial a judicial murder, it was due directly to unwarranted agitation and inflamed and unreasoning public opinion.

Colorado does not need a cause celebre.

The motion to remand will be denied.