**STATE OF NORTH CAROLINA**

v.

**Gordon S. CARR.**

**No. 2178.**

United States District Court
W. D. North Carolina,
Charlotte Division.

Feb. 15, 1967.

Elliott Schwartz, Sol. 14–A, Dist. of North Carolina, Charlotte, N. C., for State of North Carolina.

William Medford, U. S. Atty., Asheville, N. C., and Joseph R. Cruciani, Asst. U. S. Atty., Charlotte, N. C., for respondent.

## MEMORANDUM OF DECISION

WARLICK, Chief Judge.

This matter for decision comes to the court on a motion to remand filed by Elliott Schwartz, Solicitor for the 14–A Solicitorial District of North Carolina, and brings before the Court the question of the right of a subordinate official of the Department of Justice of the United States to refuse to obey a subpoena *duces tecum,* ordering production of papers of the Department, and evidence based thereon in his possession, or as found by him while in his investigation, and forwarded to the Department in Washington. The official's refusal to answer questions as well as to produce papers was based upon regulations issued by the Attorney General of the United States, under 5 U.S.C. § 22, the officer to whom the subpoena *duces tecum* was directed, and on whom service was had was Gordon S. Carr, a member of the Federal Bureau of Investigation stationed in Charlotte, and in charge of the Bureau in that city.

The facts have their inception more or less in this fashion:

A case appearing on the Civil Issue Docket of the Superior Court of Mecklenburg County, North Carolina, entitled "S. W. Ellis, plaintiff, vs. Ellis Lee, defendant", which had been filed and docketed some two years before, was calendared for and came on to trial on Monday, January 30, 1967; it involved an attempt on the part of the plaintiff to recover of the defendant a sum of money arising from the alleged misappropriation of a trailermobile trailer and involved a sum of money in which the jurisdiction would lie in the Superior Court of North Carolina. On the trial of the above and at 2:45 in the afternoon Gordon S. Carr was served with a subpoena duces tecum issued by the Clerk of the said court and at the instance of plaintiff, S. W. Ellis, which in effect directed that the said Gordon S. Carr, in addition to appearing personally bring with him to the Superior Court on that date certain records from the FBI Office in Charlotte, which had been obtained and compiled in the course of an official FBI investigation.

No attempt on the part of the plaintiff or his attorneys had been made to obtain prior approval from the Attorney General of the United States for the release of the information contained in the FBI files and sought by the subpoena duces tecum.

The Attorney General of the United States, by his order and over his signature, issued Order Number 324–64, dated October 8, 1964, as fully set forth in The Federal Register under parts 16.1, 16.2 and 16.3, prohibiting the disclosure of any information contained in the official files or discovered in the course of an ofcial investigation, by any officer or employee of the Department of Justice, including Special Agents of the FBI. This regulation was in full force and effect on January 30, 1967, and still continues.

On such subpoena duces tecum being served on him, Special Agent Carr immediately advised the office of the United States Attorney at Charlotte of such service and shortly thereafter the United States District Attorney advised the Department of Justice in Washington, of such action and the contents of the subpoena, and during that same afternoon the Department of Justice directed the United States Attorney at Charlotte that he should move the Superior Court to quash the subpoena duces tecum served

on Mr. Carr; such motion was filed at 9:30 o'clock on the following morning of January 31, and on the convening of court an Assistant United States Attorney appeared before the court and was heard on such motion to quash, which motion was continued until 2:00 o'clock that same afternoon.

Following the convening of court after the noon recess the Assistant United States Attorney presented the court with a copy of the regulations from the office of the Attorney General, dated October 8, 1964, a copy of which regulation was attached to the motion to quash.

Throughout the hearings the Attorney General, following the advice given by the United States Attorney of the service of a subpoena on Agent Carr, additionally dispatched instructions to him, directing Carr to appear in the Superior Court as subpoenaed but to respectfully decline to produce any files of the FBI or give testimony as to any information he had received in the course of his official investigation. Mr. Carr in line with the subpoena and the instructions was physically present at all times before Judge Latham. That at no time did plaintiff Ellis seek or have in his possession any information that Special Agent Carr had with respect to the cause in issue except that which he had obtained in his official capacity as such Special Agent of the FBI.

Following the convening of court after the adjourned period, Agent Carr appeared as directed, was duly sworn, and answered responsively all questions put to him until he was asked to disclose information which he was prohibited to divulge by order of the Attorney General of the United States.

Special Agent Carr, on the basis of the instructions from the Attorney General respectfully declined to answer those questions which would have disclosed prohibited information.

The court further finding that the questions and answers upon which the charge of contempt is in part based are set out below as taken from the stenographic report:

"Q. (By Mr. Clarkson of counsel for S. W. Ellis): Now, Mr. Carr, during the month of November, 1964, as an agent of the FBI, did you have occasion to investigate the theft of a 1961 trailmobile trailer?"

"A. Your Honor, on the basis of Department Order #324–64, I respectfully decline to answer."

The next question appears as follows:

"Q. Did you bring the files and records set forth in that subpoena with you today?"

"A. Your Honor, I decline to answer that question on the basis of the same departmental order."

Obviously other evidence was taken as indicative above but none of which is material to this inquiry as the whole of the controversy resolves around the factors in line with that set up above.

Following such refusal on the part of Agent Carr and on the basis of the facts set out above Judge Latham concluded that Mr. Carr was guilty of contempt of court in refusing to produce the records referred to in the Subpoena and to testify and make answer to the questions asked by counsel; and entered a judgment finding certain facts all as appear therein and including in his judgment his sentence against Mr. Carr for contempt of his court:

"It is the sentence of this court that you be taken into custody by the High Sheriff of Mecklenburg County and confined in the common jail, of this county until you have produced those documents called for in the subpoena duces tecum served upon you on the 30th of January, 1967, in the above entitled cause, or until you have otherwise purged yourself of contempt, as may be hereafter provided by this court." It is further ordered that capias and commitment shall not issue until completion of the evidence for the defendant in the case now in hearing, and the plaintiff, at that time, may move to reopen his case and recall Mr. Carr for further examinations."

During the early part of that same afternoon the United States Attorney filed

a "Petition for Removal of Criminal Contempt Proceedings" under Title 28 U.S.C. §§ 1442 through 1449, properly verified by Mr. Carr. Whereupon a temporary restraining order was issued by this court and made returnable before the undersigned Chief Judge of the Western District of North Carolina, at Charlotte on the 6th day of February, 1967, at 10:00 o'clock in the morning.

All papers were then transferred to the office of the Clerk of this Court by the Clerk of the Superior Court of Mecklenburg County.

Following such transfer and on February 3, 1967, Elliott Schwartz filed his properly verified motion to remand to the Superior Court of Mecklenburg County.

At such hearing before the undersigned on February 6, it developed from the argument that Judge Latham in the Superior Court in dictating his Findings and Conclusions and the judgment based thereon had originally made certain statements in the record, and as a part thereof, which later, following a reading on his part, caused him to make certain changes and to delete some statements from his Findings and Conclusions as originally dictated by him; and when counsel seemingly were about to become involved in a heated discussion with respect to what had been changed, how the changes had come about, etc., it became apparent that it would be not only wise but provident for a full transcript of the contempt proceedings, had in the instant hearing before Judge Latham in the Superior Court, would be necessary, and in line with such thinking the Mecklenburg County official court reporter was directed to make available to this court a full stenographic hearing, and the cause was then continued to be finally determined on Friday, February 10.

During the final hearing counsel representing the parties to this proceeding seemingly in their argument took issue with certain statements originally dictated by Judge Latham from the bench as Findings of Fact and Conclusions of Law, and which later he, on reading the

dictation, in some instances transposed, otherwise deleted, and on occasion added to such Findings and Conclusions, all presumably in an effort to complete the record and make it speak the truth. He at no time undertook to in any wise change the record or the court proceedings, in so far as they had become official records, but did what almost every judge invariably does at times,—makes changes and causes the judgment to reflect a proper wording and a complete statement of the things desired in such judgment. These changes seemingly became rather controversial in the minds of counsel, but when read and studied, added nothing to the issue before the court.

Surely one familiar with the office of a presiding judge in any instance is aware of his inherent authority to effect any change in Findings and Conclusions and the judgment based thereon until such labor ultimately becomes a court record, signed and completed, and entered as such.

What Judge Latham evidently was undertaking to do was to base his judgment upon the facts, and to cause such to be in line with the issue for determination. Certainly he had such right to author his works to speak the truth and correctly represent the facts and the law.

CONTENTIONS:

Counsel for the state of North Carolina, among other things, contends that this court is without authority to order a removal of this particular controversy to the District Court from the Superior Court of Mecklenburg County. For that among other things counsel contends that a citation for contempt is neither a civil action or a criminal prosecution; on the other hand counsel for Respondent contend that § 1442 of Title 28 U.S.Code is controlling in that citations for contempt and a hearing thereon can be either civil or criminal, dependent upon the type and character of case that is under investigation. It might therefore be wise to look into these contentions, to the end

that we first determine the status of the controversy.

Following the Findings of Fact and the Statement of Contentions the Conclusions of Law are made.

The General Assembly of North Carolina in enacting N.C.G.S. §§ 5–1 through 5–9 has spelled out and enumerated the matter of contempt and repealed the common law applicable thereto as follows:

"Any person guilty of any of the following acts may be punished for contempt" and thereupon listing among others, Sec. 6 "The contumacious and unlawful refusal of any person to be sworn as a witness, or when so sworn, the like refusal to answer any legal and proper interrogatory."

We further find that the Supreme Court of North Carolina has held this:

This section "should be strictly construed as a criminal statute." West v. West, 199 N.C. 12, 153 S.E. 600; In re Hege, 205 N.C. 625, 172 S.E. 345.

The federal courts have similarly held time after time that criminal contempts are crimes and that accordingly the accused is entitled to the benefits of all Constitutional safeguards. Ex parte Grossman, 267 U.S. 87, 45 S.Ct. 332, 69 L.Ed. 527; Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767. Even going so far as to hold that being crimes that defendant (respondent) cannot be convicted except by proof beyond a reasonable doubt and cannot be compelled to testify against himself. United States v. Goldman, 277 U.S. 229, 48 S.Ct. 486, 72 L.Ed. 862.

It is generally regarded that contempt proceedings are of two classes; those brought to vindicate the dignity and authority of the court; and those brought to enforce the rights of private parties. The former are as a rule held criminal in their nature and are generally governed by the rules applicable to criminal cases. 17 C.J.S. Contempt § 62 (3). It would therefore appear as settled that a contempt of the type and character under investigation here is one wholly criminal in its nature and falls within the act of Congress as set out in Title 28 U.S.C. § 1442.

In a diligent search only one case is found in which a different determination is made, and that decision, though not entirely in point, is held, largely it would seem on the facts under investigation. Standing alone it is not persuasive. In re Heisig, D.C., 178 F.Supp. 270.

Section 1442, Title 28 U.S.Code, entitled "Federal Officers Sued or Prosecuted" is too plain in its meaning and its intents and purposes to be other than an Act of the Congress expressing its desire to protect federal officers when engaged as such from prosecution in state courts, and to safeguard its officers and others while acting under federal authority.

The basis for such legislation has been clearly set forth by the Supreme Court in State of Tennessee v. Davis, 100 U.S. 257, 25 L.Ed. 648; There Mr. Justice Strong quoting from Martin v. Hunter's Lessee, 1 Wheat. 304, 363, 4 L.Ed. 97, states among other things:

"The general government must cease to exist whenever it loses the power of protecting itself in the exercise of its constitutional powers."

"There can be no conflict of jurisdiction. The judges and officers of state and federal courts are in duty bound by their oath to observe and respect each other's jurisdiction, and the United States Constitution, and the laws made thereunder, are supreme and binding on both." State of Tennessee v. Davis, supra.

In the final analysis both administer the same laws, whether they be enactments of the national Congress or of the state Legislature, and are equally bound to observe the rule of the Supreme Court. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714; Ex parte Dierks, D.C., 55 F.2d 371.

In other words we are not dealing with anything particularly new for we find similar rulings dating back almost to the inception of our government, and since the actual authority given by the Congress under Sec. 1442(a) and prior legislation dealing with state contempt proceedings, various decisions have been handed down that federal officers in state contempt proceedings are entitled to have the cause remanded to the federal district court. McCullough v. Large, 20 F. 309 (W.D.Pa.1884).

Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846 (1900) is another of those cases in a long line invariably holding that the authority of the Congress is plenary in the enactment of statutes as was § 1442 under study.

Presumably since the issue has been definitely settled, it would seem that United States ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951) is the last case to be decided by our court. It is quite similar to the case at bar and the ruling of the Attorney General was held proper, and that the regulations prescribed by him with respect to the production of records, and the failure of the person charged to testify were valid and within the authority of the Attorney General to make as prescribed under the Act of the Congress.

I further conclude:

1. That when the Respondent Gordon S. Carr was before the Superior Court of Mecklenburg County, on January 31 and February 1, 1967, that he was an officer of the United States, being a Special Agent of the Federal Bureau of Investigation of the Department of Justice, and at such time was acting under color of his office and in the performance of his duties.

■ 2. The order of the Attorney General #324–64 issued pursuant to the authority conferred upon by Title 5 U.S.C. § 22 was a lawful order and fully authorized by the law.

■ 3. The specific instruction of the Attorney General issued to Special Agent Carr, dated January 30, 1967, was a lawful order, likewise authorized by statute, and when given prohibited Respondent Carr from producing any information or other material contained in the files of the Department of Justice and from testifying under oath and giving any evidence acquired by him in the course of his official investigation.

4. That Special Agent Carr's refusal to testify and produce information was in line with the instructions given him by the Department of Justice.

■ 5. That in declining to produce the material sought and to divulge the information desired, the attitude of Special Agent Carr in so doing at no time indicated any contumacious or unlawful purpose, and he through such conduct was not in contempt of the Superior Court of Mecklenburg County.

6. That the order of Judge Latham, holding Respondent Carr in contempt was an erroneous order,—improperly and improvidentially entered, and not based upon a "contumacious and unlawful refusal", and was entered contrary to the laws of the United States and is void and of no effect.

7. Further that the evidence herein does not show Special Agent Carr guilty of any contempt, and conversely for the reasons assigned herein he is found to be free from such contempt and not guilty thereof. Accordingly he is hereby dismissed from any custody and confinement under the orders issued herein.

It is further ordered that the motion of the state to remand to the Superior Court of Mecklenburg County is denied.

Counsel will submit such appropriate order as is deemed necessary.