Scott County v. Fluke.

SCOTT COUNTY v. FLUKE *et al.*

1. **Officer:** COUNTY TREASURER: LIABILITY. A county treasurer is not liable for the acts or defalcations of a book-keeper or assistant in his office employed by, and acting under the direction of, the board of supervisors. The question, as to whether a treasurer, would be responsible for the misfeasance or defalcations of his deputy, left undecided.

2. **Evidence:** DECLARATIONS AGAINST INTEREST: DECEASED PERSON. In an action against a county treasurer, for failing to account for certain moneys collected as taxes, the declarations, to a third person, of an assistant in the office employed by the board of supervisors, and who had since deceased, to the effect that he had converted money received for taxes to his own use, and falsified the books to conceal his defalcation, were held admissible on the part of the defendant. The case of *The County of Mahaska* v. *Ingalls*, 16 Iowa, 81, followed.

*Appeal from Scott District Court.*

THURSDAY, JULY 13.

THIS action was commenced on the 17th day of October, 1869, by Scott county, against Thomas K. Fluke, as principal, and J. E. Stevenson and others, as sureties, upon a treasurer's bond executed January 2, 1866, conditioned that said Fluke, who had been elected treasurer for said county, should render a true account of, and promptly pay over, etc., all money coming to his possession as treasurer. The breach alleged was the failure to pay over all the money collected, as taxes for 1866 and 1867. The plaintiff asked judgment for $4,000. The answer is in denial; and also, that in January, 1868, said Fluke had fully accounted and settled.

The cause was tried to a referee, and on the 7th day of February, 1870, he filed his report of the facts found, and his conclusions of law thereon, together with the evidence

taken by him. By his report, the referee recommended a judgment for plaintiff for $2,231.44. On the same day, the report was filed, the plaintiff filed a motion for judgment upon it, and the defendants a motion to set aside the report, and also exceptions thereto. Afterward, the defendants filed a further motion to set aside the report, and for a new trial on the ground of newly discovered evidence; and supported the motion by affidavits tending to show that since the report was made, and upon the trial of the defendant Fluke on an indictment for embezzlement, it had been shown that the money constituting the deficit sued for, had been feloniously embezzled by a bookkeeper in the treasurer's office, who had confessed the same, and had committed suicide directly thereafter. This motion was sustained. The defendants then filed an amended answer, averring that the money claimed by plaintiff was stolen from the treasury, without any negligence on the part of defendant Fluke. The cause was then again tried to the same referee, and in November, 1871, he filed his report recommending judgment in favor of defendants. Exceptions, etc., were filed by plaintiff; but, upon the hearing, the district court rendered judgment upon the report, in favor of defendants for their costs. The plaintiff appeals.

*J. B. Leake* and *John N. Crawford* for the appellant.

*James T. Lane* for the appellees.

Cole, J. — I. The first proposition argued by appellant's counsel is, " that a part of the money, at least, found to be missing, passed into the hands of the defendant Fluke, and was unaccounted for by him." It does appear from the evidence that a portion of the money unaccounted for by the defendant Fluke at the close of his term of office, had, directly or indirectly, come to his hands. But, it also

appears that, subsequently, when some errors in the accounts were first discovered and called to the attention of defendant Fluke, he paid over to the plaintiff the sum of $1,000 to apply on the deficit then ascertained and that might thereafter be discovered, with the understanding that if such sum was found to be in excess of all deficits, the difference should be refunded to him. So far as the evidence discloses, this sum of $1,000 is largely more than the money coming to Fluke's hands which remains unaccounted for. Under such circumstances, we cannot say that any part of the missing money passed into the hands of the defendant Fluke.

II. It is next urged " that the defendant Fluke did not exercise reasonable care and diligence in the preservation of the plaintiff's money." This is a question of fact, upon which the finding of the referee stands as the verdict of a jury. We see no controlling reason which should lead us to differ with the referee, and surely there is no such clear weight of evidence against his finding as would justify us in setting it aside.

III. It is also claimed by appellant's counsel that the book-keeper, Moses Brotherlin, through whose alleged 1. OFFICER: felonious conduct the money was lost to the county treasurer: liability. plaintiff, " was a deputy collector, for whose acts the treasurer is responsible." That the defendant Fluke had another person in his office during his entire term, who was duly appointed and qualified as deputy treasurer, is not controverted; that Brotherlin did act as a deputy or assistant collector under section 17, chapter 173, of laws of 1862, on one or more occasions when the deputy visited his family in Le Claire, is also uncontroverted; but it is furthermore quite indisputable that none of the defalcations or felonious acts were connected with his transactions as such assistant collector. We do not deem it necessary or proper for us to decide in this case whether a treasurer is liable for the acts of his book-keepers, assistant collectors,

etc., as for his deputy. For, in this case, there are special facts controlling it, regardless of the general rule of law. It is shown that the board of supervisors inaugurated a change, or introduced a new system of keeping accounts by and with their treasurer ; that the board appointed a committee to superintend and effectuate it, and that Brotherlin was employed or continued in the treasurer's office as book-keeper, etc., by the authority and express direction of this committee, and was paid by order of the board. To hold that under such circumstances, and without any negligence on his part, the treasurer should be liable for the felonious acts of the person thus thrust upon him, would be violative of justice and right.

IV. The only other point pressed by the appellant's counsel for our decision, is, "that the declarations of Brother-

2. EVIDENCE: declarations against interest: deceased person.

lin are not competent testimony." In order to understand this question, it is necessary to further state the facts of the case. Brotherlin was the book-keeper in the treasurer's office during nearly all the defendant Fluke's term. After the expiration of his term and his general settlement with the county, other persons in examining the treasurer's books and the stubs, from which the tax receipts had been torn, found erasures and alterations on the stubs and in the register book of taxes collected ; the changes related invariably to district taxes. The effect of these erasures and alterations always was to diminish the tax as it stood on the tax list, making the amount less upon the register than the actual amount on the tax list, but always in even dollars, from one to thirty dollars in each case. In some instances the stubs were missing, appearing to have been torn out ; in other instances taxes had been paid and no entry appeared on the books concerning them. These matters were presented to Mr. Fluke and he made several unsuccessful efforts to get this book-keeper, Brotherlin, to come and explain or help examine the books. Failing to secure Brotherlin's attend-

ance, although he was not otherwise engaged, Fluke in January, 1869, paid to the county the sum of $1,000, which was about the amount of the aggregate of deficits then claimed or discovered. In February, 1869, both Fluke and Brotherlin were indicted separately, for malfeasance in office, and embezzlement. Each gave bail for his appearance at the. next term of court. In May, 1869, Brotherlin died from a gun-shot wound produced by a gun in his own hands, under such circumstances as render it probable that he committed suicide. At the May term 1870, and after the first report of the referee in this case was filed, Fluke was tried and acquitted.

Upon the trial of Fluke, on the indictment, as upon the trial of this case when last tried before the referee, Rufus Linderman testified, as a witness, that he was formerly county judge of Scott county and was acquainted with Moses Brotherlin ; that for about two years before Brotherlin's death his acquaintance with him was intimate ; that, on the Tuesday preceding the Friday on which Brotherlin died, in May, 1869, after some conversation leading thereto, and after some hesitation, Brotherlin stated that he had taken money from the drawer in the treasurer's office frequently ; that sometimes parties would pay taxes to him that he would not report ; that sometimes he would report and account for a less amount than the sum paid him ; that sometimes he doctored the books, by making alterations and erasures in stub books and tax, list of some one's tax, corresponding with the amount taken by him from the drawer, etc. ; that he sometimes had trouble to conceal these abstractions, etc., but that Fluke knew nothing of it ; after these statements were made Brotherlin further stated that the criminal case against him would probably be continued, and inquired whether his surety on his appearance bond would be holden if he should die in the meantime, and was told that he would not. This testimony was

duly excepted to, and its admission constitutes the last assigned error.

The respective counsel have ably discussed the question of the competency of this testimony in the light of principle, and the numerous adjudicated cases bearing upon it. The question, however, underwent a careful and elaborate examination by this court in *Mahaska Co.* v. *Ingalls*, 16 Iowa, 81, in an able opinion prepared by DILLON J., in which the authorities cited by counsel, and others, were referred to, and some of them reviewed. It was held that such testimony was competent. We say *such* testimony because there, as here, the declarant was dead; the declaration was against his pecuniary interest, and here it would subject him to penal consequences too, which would add to its weight, as was there said; the declaration was of facts within his immediate personal knowledge; and it is manifest, from the circumstances of this case, that there was no probable motive to falsify the facts declared. That case must be regarded as decisive of the question here made.

Affirmed.