### THOMAS DIGNAN V. B. G. SHIELDS.

1. COLLECTOR OF 'CUSTOMS.—A collector of customs may delegate to his deputy the duty of receiving and keeping customs moneys, as cashier in his office, without violating the regulation prohibiting customs officers from performing their duties by substitutes.

2. DEPUTY COLLECTOR OF CUSTOMS.—A deputy collector of customs may, in case of the absence, disability, or death of his principal, perform the duties of collector in receiving and keeping customs moneys, as well as other duties of collector, without such special duty being designated in his appointment.

3. DEPUTY COLLECTOR OF CUSTOMS.—The collector of customs is responsible for the acts of his deputy, and, even when performed after his death, his estate is responsible. Though the law prescribes no bond for the deputy, the collector may exact one, for his security against defalcation, before or after the appointment of the deputy.

4. BOND.—See case for a common-law bond, voluntarily given, which was held to have been properly enforced.

5. EVIDENCE—PRACTICE.—In a suit against a security on an officer's bond, for the defalcation of his principal, it is immaterial whether the admissions of the principal were correctly admitted in evidence or not, the defalcation being sufficiently established by evidence *aliunde*, and the case tried without the intervention of a jury.

#### ON MOTION FOR REHEARING.

1. DEPUTY COLLECTOR OF CUSTOMS.—Whilst deputy collectors are constituted and appointed by the collector with the approval of the Secretary of the Treasury, their tenure of office is, in the opinion of this court, *de facto* at the will of the collector.

2. COLLECTOR OF CUSTOMS.—Whilst the regulations forbid a collector of customs from residing out of his district, farming out his office, and performing his duties by substitute, he is not prohibited from acting by his deputy in the receipt and custody of customs moneys, or the performance of other official duties.

3. DEPUTY COLLECTOR'S BOND.—A bond executed by a deputy collector of customs to his principal, for the faithful performance of the duties of cashier in the custom-house office, does not impose on the deputy the performance of other or greater duties than are required by law, nor is it invalid because exacted *colore officii*.

ERROR from Galveston. Tried below before the Hon. William H. Stewart.

Suit was brought by B. G. Shields upon a bond given by

Stone to him as collector of customs and disbursing agent for the Galveston district, and upon which Dignan was surety. The condition of the bond was as follows:

"That whereas the said Benjamin G. Shields, as collector of customs aforesaid, hath appointed the said Edward L. Stone as cashier in the office of collector of customs, and the said Benjamin G. Shields hath, pursuant to law, appointed the said Edward L. Stone to act, in case of sickness or unavoidable absence, in place of the said Benjamin G. Shields as disbursing agent for the United States for the customs district of Galveston, Texas: Now, therefore, if the said Edward L. Stone shall truly and faithfully execute and discharge all the duties as cashier, in case of sickness or unavoidable absence, in place of Benjamin G. Shields as disbursing agent of the United States aforesaid, then this obligation to be void and of none effect; otherwise it shall abide and remain in full force and virtue.                    EDWARD L. STONE.

                                        THOMAS DIGNAN."

The defendant excepted to the petition for the following causes:

1. That the bond was made without the authority of law to bind the defendant or to make him liable as surety for E. L. Stone as cashier in the office of collector of customs, no such office being created or recognized by the laws of the United States.

2. That the duties of such pretended officer, to wit, cashier in the office of the collector of customs, are not set forth in said bond or in said petition.

3. That the condition of said bond is uncertain, indefinite, and undefined in all and every feature of said condition relied on by plaintiff for recovery in said action.

The exceptions were overruled, which was assigned as error.

The defendant also filed a general denial, and pleaded specially, that Shields obtained and extorted the bond from Stone and Dignan by his representation that the bond was

made in pursuance of the requirements of law, and that he would remove him from the position he then held as deputy collector of customs if he did not assume the duties required of him and designated in the bond, and that the duties so required were more onerous and responsible than his duties as deputy collector and disbursing agent required of him.

4. That Shields, as collector of customs and disbursing agent of the government, was charged by the laws of Congress and the regulations of the Treasury Department solely and personally with the custody of the public moneys collected in his district, together with such other depositaries as might be selected by the Secretary of the Treasury of the United States, and that Shields had no authority to make or appoint a deputy to perform the duties required of him personally; that Stone was not appointed by law, and his appointment by Shields was wrong, and therefore he could not recover against appellant. There were other matters pleaded, not necessary to notice.

Without detailing the evidence, it may be remarked that the defalcation seems to have been clearly established, without regard to the apparent admissions of Stone, which were admitted over objection. Jury waived and judgment for plaintiff.

*Waul & Walker*, for plaintiff in error.—At the date of the bond Stone held the position of deputy collector, from which he could only be removed by the Secretary of the Treasury, the manner of which removal is pointed out in Customs Regulations, arts. 1040–1043.

Afterwards, in pursuance of law and under the requirements of the Secretary of the Treasury, he received the additional appointments of special deputy collector and special deputy disbursing agent. While holding these positions, and without any pretended additional compensation whatever, and without any consideration, he was required, by the arbitrary will of the collector, to take upon himself all the

duties and responsibilities of the office of collector, whether the collector was present or absent, sick or well. Assuredly, some authority should be shown for such an exercise of power; some law of Congress; some approval of the Secretary of the Treasury; otherwise the collectors might farm out their offices, give no personal care or supervision, simply looking to the strength of a bond presumed to be good enough at common law to protect the collector in his violation of law. It is, however, contended by plaintiff, as averred in his petition, that he had the right to control, suspend, or remove Stone from his position as collector.

Our position is, that the collector has not the power to remove a deputy, a clerk, an inspector, or any subordinate. This power is vested, by the Constitution of the United States and the laws of Congress, in the Secretary alone.

The deputy collector is a recognized "officer of customs"; his tenure of office is not dependent upon the will of his principal, nor does his office terminate with his death. (Rev. Stats., sec. 2625.)

[Counsel argued at length, citing, in support of their positions, Cust. Reg., arts. 1034, 1165; Rev. Stats., secs. 1004, 2634; Const. of U. S., art. 2, sec. 2; 4 Opinions of Att'ys-Genl., pp. 162, 164; *ex parte* Hennen, 13 Peters, 259; United States *v.* Hartwell, 6 Wall., 385; 2 Benedict, 357; United States *v.* Gaussen, 2 Woods, 97; United States *v.* Tingey, 5 Peters, 125; 1 Curtis, 136; Churchill *v.* Perkins, 5 Mass., 541.]

The case in 1 Curtis, 136, and all other cases to which we have been referred, whether the sureties have been held or not, clearly lay down the principle, that if a public officer has used his official authority to induce a subordinate, or one under his power, to enter into an obligation not required by law, it is not binding. And Sewell, J., in Churchill *v.* Perkins, 5 Mass., 541, states: "When the plaintiff demands the fruit of an obligation *colore officii*, it must be shown that the demand is justified by some authority of the officer; other-

wise it is against sound policy, and is void by the principles of the common law."

*Price & Wilson, Willie & Cleaveland,* and *J. R. Burns* for the defendant in error.

I. The office of cashier in the office of collector of customs is authorized by law. (Rev. Stats., sec. 2630; Reg. Treas. Dept., arts. 1004, 1165.)

II. The custody and control of money belonging to the United States may be delegated by the collector to a sub-agent or cashier, the collector being responsible for his acts. (Stats. at Large, arts. 2619, 2630, 3639; Reg. Treas. Dept., arts. 1004, 1065; United States v. Barton, Gilp., 439; Schmaire v. Maxwell, 3 Blatchf., 408; Falleck v. Barney, 5 Blatchf., 38.)

III. Admitting that Shields had no authority to delegate such a trust, Stone and his surety are still liable to Shields for Stone's defalcation. (Story on Agency, secs. 15, 201, 217*a*; City of Marshall v. Bailey, 27 Tex., 686.)

IV. The bond was a voluntary one, given for a sufficient consideration to the interested party, to secure the faithful discharge of a trust, and was good at common law. (City of Marshall v. Bailey, 27 Tex., 686; Johnson v. Erskine, 9 Tex., 1; Bish. on Contracts, sec. 584; Rowlet v. Eubank, 1 Bush, (Ky.,) 477; Pay v. Shanks, 56 Ind., 554.)

V. Shields, upon appointing Stone to an office under him, for the faithful performance of which Shields alone was liable to the government, had a right, for his own protection, to require of such appointee an indemnity bond. And such bond being between parties able and willing to contract, upon a sufficient consideration, for a lawful purpose, and not forbidden by statute, is good at common law. (City of Marshall v. Bailey, 27 Tex., 686; Johnson v. Erskine, 9 Tex., 1; Rev. Stats., sec. 2630; Pay v. Shanks, 56 Ind., 554; Griffiths v. Hardenbergh, 41 N. Y., 469; Burrall v. Acker, 23 Wend., 606; Decker v. Judson, 16 N. Y., 442.)

GOULD, ASSOCIATE JUSTICE.—The position of cashier in the office of collector of customs is not unknown to the law, as appears by the customs regulations adduced in evidence. (Cust. Reg., arts. 1004, 1165.) For aught that appears to the contrary, it was competent for the collector at Galveston to delegate to his deputy the duty of receiving and keeping customs moneys, as cashier in his office, without violating the regulation prohibiting customs officers from performing their duties by substitutes. (Cust. Reg., art. 1152. See also Cust. Reg., art. 566, where the right of the collector to designate a deputy for certain other duties is recognized.)

Without such special designation, the deputy collector may, in case of absence, disability, or death of his principal, perform the duty of receiving and keeping customs moneys, as well as any other duty of the collector. (Rev. Stats., sec. 2630; Cust. Reg., arts. 1033, 1060.)

For these acts of his deputy the collector is responsible, and, even when performed after his death, his estate continues responsible. (Rev. Stats., sec. 2625; Cust. Reg., art. 1061.) The law prescribes no bond for the deputy collector, but it does not forbid the collector from protecting himself by such bond. In requiring from his deputy, whether before or after his appointment, indemnity against loss through the defalcation of the latter, the collector but exercised a legitimate precaution. See the Revised Statutes, sec. 3148, for a statutory recognition, in the corresponding case of a deputy collector of internal revenue, of the right of the collector to revoke such appointment, and to require and accept bonds or other security from his deputies. The bond in the present instance appears to have been voluntarily given, and, as a valid common-law bond, was rightly enforced. (City of Marshall *v.* Bailey, 27 Tex., 686; Griffiths *v.* Hardenbergh, 41 N. Y., 469; United States *v.* Tingey, 5 Pet., 115; Hawes *v.* Marchant, 1 Curtis, 136.)

It is immaterial whether the declarations of Stone were correctly admitted or not. The fact of Stone's defalcation

was sufficiently established by other testimony, and the case was tried by the court without a jury. (Smith v. Hughes, 23 Tex., 248; Melton v. Cobb, 21 Tex., 539.)

The judgment is affirmed.

AFFIRMED.

Opinion March 25, 1879.

Motion for rehearing was taken to the Austin Term.

ON MOTION FOR REHEARING.

GOULD, ASSOCIATE JUSTICE. — The questions in this case turn largely upon the regulations and usages of the Treasury Department of the United States, and these have but rarely been the subject of investigation in the courts of this State. Feeling our want of familiarity with that complex system of statutes, regulations, and usages, we have had sufficient distrust in the correctness of our conclusions to induce a ready and careful consideration of the elaborate written argument of counsel in support of his application for a rehearing. The result, however, is, that our views have undergone no change.

One of the positions taken by counsel is, that a deputy collector is an officer of customs whose tenure of office is not dependent on the will of his principal, but who is removable only by the Secretary of the Treasury. Another is, that the collector of customs can only act by deputy in certain contingencies, and that—except where there are cashiers regularly designated by the Secretary of the Treasury — the collector must be himself, personally, the recipient and custodian of customs moneys.

If neither of these positions be correct, the argument based upon them must fall to the ground.

1st. Whilst deputy collectors are "constituted and appointed" by the collector with the approval of the Secretary of the Treasury, it is our opinion that their tenure of office is de facto at the will of the collector.

Speaking of the deputy collector, Mr. Berrien, in an official opinion as Attorney-General of the United States, said: "The deputy—as his name imports and as it is expressly laid down by law writers—exercises his office in right of another. He is, as they express it, the shadow of his principal, having no authority distinct from him, nor to act otherwise than in his name, nor to perform any other duties but such as the collector himself may perform." (2 Opinions of Att'ys-Genl., p. 413.)

In the very opinion of Mr. Legaré cited by counsel, holding that the appointment of inspector and other permanent officers of the United States is the act of the Secretary and not of the collector, he distinguishes between such permanent officers, on the one hand, and "occasional deputies, employés, or agents of the collectors," on the other. (4 Opinions of Att'ys-Genl., p. 163.)

In another official communication of the same date, upholding the power of removal in the Secretary in case of permanent inspectors, he says, even of these permanent officers, that the collector has uniformly been consulted, and that it is too late for the Secretary to act on the mere *summum jus* and eject an officer without the consent of a collector, "except in a strong case." We cannot doubt that, practically, deputy collectors, like other deputies, hold their office at the will of the collector, who is responsible for their acts. They are for many purposes officers of the United States, but are not believed to be of the class of "inferior officers" contemplated by the Constitution, nor of the class of "subordinate officers" whose removal is controlled by customs regulations.

It is to be remarked, that the law fixes a limit to the emoluments of the collector, and that the enforcement of that limit requires that both the number and compensation of the deputies and clerks allowed the collector should be fixed. (United States v. Morse, 3 Story, 90, 91; 4 Opinions of Att'ys-Genl., p. 230; 7 Opinions of Att'ys-Genl., p. 46.)

2d. Whilst the regulations forbid a collector from residing out of his district, farming out his office and performing his

duties by substitutes, we are unable to see that he is forbidden to act by his deputy in the receipt and custody of customs moneys, or in the performance of other official duties. In the absence of a regularly designated cashier, or other officer specially designated, the collector is personally responsible as the recipient of such moneys, whether they be actually received in person or by deputy; but we cannot believe that the regulation forbids him from assigning that special duty to a deputy. It may be that when so assigned the deputy becomes an officer specially designated for that custom-house, within the meaning of the regulation. If so, the collector is still responsible for the proper performance of this and any other official duty intrusted to a deputy. Such deputy is merely designated for the discharge of the duties of cashier in the collector's office, and does not hold a separate office as cashier. If the collector, for his own protection, requires of him a bond for the faithful performance of those particular duties instead of his duty generally as deputy, instead of being more onerous, the bond would seem to be less so than the bond which it is admitted might be required of every deputy. In requiring such a bond, the collector cannot be said to impose on his deputy additional or greater duties than were prescribed by law; nor can it be maintained that the bond is invalid because illegally exacted *colore officii.*

The bond sued on was not a statutory bond, but was, we think, a valid bond at common law, protecting the collector in case of the failure of his deputy to account for customs moneys received by him.

The motion for rehearing is overruled.

MOTION OVERRULED.

Opinion May 9, 1879.