### UNITED STATES FIDELITY & GUARANTY CO. v. UNITED STATES et al.

No. 8200.

Circuit Court of Appeals, Fifth Circuit.

Aug. 25, 1937.

J. Russell Mount and Newton Gresham, both of Houston, Tex., for appellant.

Steve M. King, U. S. Atty., and Charles S. Pipkin, Asst. U. S. Atty., both of Beaumont, Tex., and Alto A. Gunter, of Port Arthur, Tex., for the United States.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

The United States brought this suit against Alto A. Gunter and the United States Fidelity & Guaranty Company, respectively principal and surety on the official bond given by Gunter when acting as collector of customs for customs collection district No. 21, to recover $2,024.30, money embezzled by Wilbur Cooke, deputy collector for the same district. Motions of defendants for a directed verdict were overruled. The court charged the jury that defendants were liable and left nothing for the jury to decide but the amount of the embezzlement. There was a verdict in favor of the United States for $1,250.42, upon which the judgment appealed from was entered. Other provisions of the judgment are not material to this appeal. Error is assigned to the denial of the motions for verdict and to the charge of the court fixing liability.

The question for decision is whether Cooke was an independent officer of the customs for whose defalcations Gunter was not responsible or was Gunter's agent for whose acts he was accountable. This presents a mixed question of law and fact.

The following material facts are not in dispute: Customs collection district No. 21 includes as separate ports of entry Port Arthur and Beaumont, Tex., which are some 20 miles apart, with headquarters at Port Arthur, where Gunter was stationed. Ships coming to the district are boarded off the bar at Sabine by customs officers, but if destined to Beaumont they are entered and cleared there and not at Port Arthur. Gunter was assistant collector of customs for the district. Under provisions of the Act of March 4, 1923, § 4 (19 U.S.C.A. § 8), he was required by the Secretary of the Treasury to act as collector of the district and to give the bond in suit. He served in that capacity from June 27, 1928, to January 28, 1929. The condition of the bond is as follows:

"The condition of the foregoing obligation is such, That whereas the Act approved March 4, 1923, 'An Act to provide the necessary organization of the Customs Service, etc., requires the said Alto A. Gunter to act as Collector of Customs for Customs Collection District No. 21, with headquarters at Port Arthur, Texas, until a Collector has been appointed and duly qualified.

"Now, therefore, if the said Alto A. Gunter has truly and faithfully executed and discharged, and shall continue truly and faithfully to execute and discharge, all the duties of the said office, according to law (including disbursements made by direction

of the Secretary of the Treasury under authority of section 3639, U.S.Revised Statutes [31 U.S.C.A. § 521 and note]), then the above obligation to be void and of no effect; otherwise, it shall abide and remain in full force and virtue."

Cooke was given a probationary appointment for six months as deputy collector of customs at Beaumont on July 17, 1916, by the Secretary of the Treasury, pending a final decision as to making Beaumont a regular customs station. Cooke was regularly appointed deputy collector of customs in charge at Beaumont about February 15, 1921, took the oath required by statute, and executed a bond to Robert E. Latimer, the then collector of the district, in the sum of $1,000, to guarantee the faithful performance of his duties. This bond was renewed and kept in force until May 3, 1929, when it was superseded by another bond. Both the oath and bond recite that Cooke had been appointed to serve as deputy collector in charge of the customs station at Beaumont, Tex.

Cooke was also customs inspector and assistant appraiser of merchandise. He was in sole charge and the only customs officer at Beaumont. He entered and cleared all vessels entering the port of Beaumont and collected all fees and dues from them. He also collected duties on goods imported. Except the amounts he embezzled, he deposited all moneys of the United States he received in the Federal Reserve Bank at Houston or in the designated federal depository at Beaumont to the credit of the Treasurer of the United States according to his instructions. Cooke kept the required itemized account of the amounts collected and of the deposits he made, except the amounts embezzled, which he omitted from his records. He made out a report monthly from his records and sent one copy direct to Washington. He sent one copy to Gunter at Port Arthur. This copy was not kept at Port Arthur, but was required to be forwarded by Gunter to the auditor at Washington. Cooke also made daily reports to Gunter, but these consisted only of the manifests of ships arriving at Beaumont.

The petition alleged embezzlement of fees and duties received from nine vessels, but the record is silent as to five of these items. He embezzled approximately the amount of the tonnage dues paid by the following vessels, the Rotterdam, the Lumina, and the Markland, which vessels arrived at Beaumont respectively on July 27,

August 22, and October 6, 1928. These vessels respectively paid tonnage dues of $301.-62, $224.12, and $226.34. He also embezzled $505.96, import duties on goods brought in by the ship Edgemore, which arrived at Beaumont on December 6, 1928. Cooke made entries in his books and deposited and accounted for all the fees received from these ships except the tonnage dues and the import duties he embezzled. The judgment entered was based on these four items.

Cooke testified, without contradiction, that in respect of tonnage dues, after a vessel had visited Beaumont five times in one year, she was exempt from payment of the tonnage tax on the next trip. Certificates were made out for tonnage dues and given to the master of the ship, but no record was kept at Port Arthur or Beaumont of the number of times the ship visited the port in one year. Cooke also testified that Gunter frequently came to Port Arthur and looked over his books; that inspectors were sent from Washington to audit his accounts, from time to time; but that no auditor could detect his embezzlement from an inspection of his records.

Gunter testified that he did not at any time while acting as collector have any reason to suspect Cooke of being guilty of embezzlement or defalcation; and that the embezzlement was discovered through an incident which revealed an irregularity in collecting funds and carrying them over for some ten days.

The Secretary of the Treasury is authorized by law to appoint deputy collectors of customs and prescribe their duties when not otherwise defined by law. 19 U.S.C.A. § 6. Deputy collectors so appointed have authority by law to receive entries, collect duties, and to perform any and all functions prescribed by law for collectors of customs, subject to such regulations and restrictions as the Secretary of the Treasury shall prescribe, 19 U.S.C.A. § 36, and the Secretary of the Treasury is authorized, whenever in his opinion the public interest demands it, to clothe any deputy collector, at a port other than the district headquarters, with all the powers of his principal appertaining to his official acts; and may require such deputy to give bond to the United States in such amount as he may prescribe for the faithful performance of his official duties. 19 U.S.C.A. § 37.

The Customs Regulations provide, in substance, as follows: Under article 1182 deputy collectors are designated as officers

of the customs and required to perform the functions prescribed by law for collectors, except the disbursement of moneys. Article 1183 provides that deputy collectors in charge of ports of entry shall, under the general supervision and direction of collectors, enter and clear vessels, receive entries of merchandise, collect duties, fees, and other moneys, issue documents to vessels, and perform all other services prescribed by law, the regulations of the department, or the instructions of the collector. Such deputy collectors in charge shall be bonded to the collector in a reasonable sum. Article 1078 provides that all collections at a port of entry in charge of a deputy collector shall be deposited daily by him in the designated depository at the port of collection, to the credit of the Treasurer of the United States in the name of the collector for the district.

■ In addition to the above-cited statutes and regulations, in determining the accountability of Gunter and Cooke, it is necessary to consider the provisions of Rev.St. § 3639, as amended, 31 U.S.C.A. § 521. The section refers to many public officers by designation and provides that collectors' of customs, surveyors of customs acting as collectors, and all public officers of whatsoever character are required to keep safely all public money collected by them, or otherwise at any time placed in their possession and custody, till the same is ordered, by the proper department or officer of the government, to be transferred or paid out. The statute does not specifically mention assistant collectors of customs acting as collectors or deputy collectors of customs, but they would be included in the general clause applying to all public officers. By intention and necessary implication, they are covered by the statute.

■ From the above-cited facts, statutes, and regulations, it is plain that Cooke was an independent officer of the customs in full charge at Beaumont, a separate port of entry, with all the powers and duties at that port of the collector of the district. He collected money of the United States which it was his duty to hold safe until directed by proper authority to transfer it. He was directed by the Secretary of the Treasury to transfer it to the Treasurer of the United States by depositing it in the designated banks. Gunter had no duties to perform in respect of this money.

■ Nevertheless, it is argued on behalf of the government that because the Secretary of the Treasury did not require a bond from Cooke in favor of the United States, 19 U. S.C.A. § 37 does not apply; and that by failing to exact a bond from Cooke, Gunter was guilty of a breach of duty. Under section 37 it was discretionary with the Secretary of the Treasury to require a bond from Cooke in favor of the United States. His discretion was exercised by the regulation requiring a bond to the collector of the district. Gunter could not have exacted a bond from Cooke to himself as there was an existing, valid bond in favor of the collector of the district which was available to Gunter and the United States.

■ It is also argued that the provision of article 1078 above cited that the money should be deposited in the name of the collector of the district made Gunter accountable for it. If the provision be strictly construed, it has no application as there was no collector of the district. But at most it is a mere detail. The important provision is that the money be deposited to the credit of the Treasurer of the United States, thereby transferring it and putting it out of the possession of the officer collecting it.

It is further contended on behalf of the government that although Cooke was a deputy collector in charge at Beaumont, he was an agent and subordinate of Gunter as Gunter had supervisory jurisdiction over him; and that Gunter as collector of the district, which must be considered as a whole, was accountable for all the money collected by Cooke and responsible for its payment to the United States.

■ It is a general rule that when public money of the United States for which he is accountable is actually or constructively in the custody of a federal official, through a subordinate, embezzlement by the subordinate is not a defense to a suit on the bond of the official. In this connection it is immaterial whether the subordinate is appointed under the civil service laws or directly by the official. Boyden v. U. S., 13 Wall. 17, 20 L. Ed. 527; Smythe v. U. S., 188 U.S. 156, 23 S.Ct. 279, 47 L.Ed. 425; Cleveland, Columbus, etc., R. R. v. McClung, 119 U.S. 454, 7 S.Ct. 262, 30 L.Ed. 465; Bryan v. U. S. (C.C. A.) 90 F. 473, 53 L.R.A. 218; Pond v. U. S. (C.C.A.) 111 F. 989; Dignan v. Shields, 51 Tex. 322. It may be noted that in Pond v. U. S. the bond also covered the collector's deputies and section 3148, Rev.St. referred to has been omitted from the code.

852

■ It is true Gunter had general supervisory authority over Cooke and the right to give him instructions pertaining to his duties, supplementary to and not in conflict with the law or the Treasury Regulations, but that fact of itself would not make him responsible for Cooke's embezzlement if Cooke were an independent officer of the customs, himself accountable directly to the United States. As well might it be said that the Secretary of the Treasury, who has absolute control of all customs officials, would be responsible for that reason. In the view we take of the case, it does not fall within the rule above set out. Decisions tending to support the rule are not in point. We conclude that Cooke was an independent officer of the government and accountable direct to the United States for moneys he collected in his official capacity as deputy collector of customs in charge of the separate port of entry of Beaumont and that Gunter was not responsible for Cooke's embezzlements. The following authorities, although not controlling, are persuasive and tend to support these views: Robertson v. Sichel, 127 U.S. 507, 8 S.Ct. 1286, 32 L.Ed. 203; U. S. v. Collier, Fed.Cas. No. 14,833; State v. Kolb, 201 Ala. 439, 78 So. 817, 1 A.L.R. 218; Scott County v. Fluke, 34 Iowa, 317.

In United States v. Collier, supra, a note by the reporter indicates the judgment was affirmed by the Supreme Court, the justices being equally divided. While this adds nothing to the authority of the decision, neither does it detract from it. In Cleveland, Columbus, etc., R. R. v. McClung, 119 U.S. 454, 7 S.Ct. 262, 30 L.Ed. 465, and Dignan v. Shields, 51 Tex. 322, cited above as authority for the general rule, the deputy collectors of customs were acting as cashiers in the office of the collectors at the headquarters port and neither was in charge of a separate port of entry. These cases do not compel a conclusion different from that above stated.

■ The condition of the bond does not cover defaults by Cooke and there is no statute or regulation to be read into it that would make Gunter and his surety liable at all events. However, in view of a new trial, we may consider whether Gunter was guilty of any breach of duty that would make him responsible under the condition of his bond. This would require a showing of causal connection between the loss and Gunter's negligence or disregard of duty. Deal v. U. S., 274 U.S. 277, 47 S.Ct. 613, 71 L.Ed. 1045. The duties of collectors of customs as prescribed by statute are, generally, to enter and clear vessels arriving in port, collect fees and duties, and keep proper records and make reports of same. 19 U.S.C.A. §§ 33, 34, 35. A collector is required to take an oath of office in which he swears "that he will use his best endeavors to prevent and detect frauds against the laws of the United States imposing duties upon imports." 19 U.S.C.A. § 21. This also defines part of his duties. Gunter had general supervision over Cooke and was bound to use reasonable care and prudence in exercising it, but it was not his duty to audit Cooke's accounts nor was he obliged, unless his suspicions were aroused, to seek extraneous evidence to verify them. It appears from the record that Cooke had been in the post office department under his true name of Wm. H. Cook and was dismissed for offenses, but it does not appear that he was prosecuted criminally. It is not shown that this was known to Gunter or any one else in the custom service Cooke had been in charge at Beaumont for some sixteen years before his embezzlement involved in this suit occurred. No doubt in that time he had built up a reputation for honesty and efficiency. The monthly statements transmitted by Cooke through Gunter would not necessarily arouse suspicion as to the collection of tonnage dues as there was no way for Gunter to determine from them whether the vessel was exempt on that particular trip. The daily statements sent to Gunter perhaps would show that the vessel brought in dutiable merchandise, but did not necessarily show whether the duty had been collected as the goods might have been landed under bond for storage or transshipment. Nor would it appear from the monthly statements that import duties had not been collected. Gunter testified that he entertained no suspicion of Cooke. Cooke testified that his embezzlements could not have been detected by an audit of his books. To show that Cooke was an embezzler was not evidence of breach of duty by Gunter. It is certain that the most meticulous discharge of his duties by Gunter would not have prevented the first embezzlement. And this is true in only a slightly lesser degree as to the others. The conclusion we reach is that Gunter was not guilty of any breach of duty that would warrant a recovery on his bond against him or his surety.

Considering the facts shown by the record, appellant was entitled to a directed verdict. Having overruled the motion to that effect, it was the duty of the court to charge

the jury fully as to the basis of liability alleged. For the errors assigned, the judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

HUTCHESON, Circuit Judge (dissenting).

The majority opinion grounds the reversal of the judgment upon the conclusion that "Cooke was an independent officer of the government, accountable directly to the United States for moneys he collected in his official capacity as a separate collector of customs in charge of a separate port of entry at Beaumont, and that Gunter was not responsible for his default."

I cannot agree with this view. In my opinion, the duties of Gunter as acting collector extended to supervision over and responsibility for funds collected by any of those employed in his District, including Cooke at Beaumont, and that for Cooke's failure to collect and safely keep customs funds, Gunter and his bond were responsible.

As completely as my associates adopt, I reject, the theory of the defense that Cooke was a separate and independent officer at Beaumont, a separate port of entry, appointed by and responsible to the Secretary, and though he reported to the Secretary through Gunter at Port Arthur, he was not a subordinate of Gunter so as to make Gunter and his surety liable for his default.

Because the question is an interesting one, and not free from doubt, I think it desirable to set down the reasons for my dissent.

What Cooke and Gunter were to do, and what the relations of their duties and doings to each other, was fixed by law; what they did is clearly shown in the record, which is without conflict.

In 1915 Cooke was appointed, by the Secretary of the Treasury, deputy collector of customs in charge of the port of entry at Beaumont, in customs collection district No. 21. As such, he executed a bond to the then collector,[1] which bond was renewed from year to year. When Gunter had come in as active collector in 1928, Cooke had not been reappointed as deputy collector. He had, however, been appointed acting appraiser, and had taken the oath as such. He testified that though he had run a more or less one man office at Beaumont, and Mr. Gunter never undertook to point his duties out to him, he did come frequently to supervise his work and inspect his office, and that he was instructed to and did send his reports to Gunter. In his work as deputy collector, except when on leave of absence, he personally and exclusively handled in-coming vessels, took up and collected customs fees and import duties arising thereout. As a part of these activities, he would appraise, estimate, and collect the duties and deposit the collections, when checks, in the Federal Reserve Bank in Houston; when cash, in the government depository in Beaumont, both depositories having been designated by the Secretary of the Treasury. He made and kept a permanent record at Beaumont of the tonnage taxes and other duties, and, in addition, made up schedules showing, as to dutiable consumption entries, the entry, the amount collected, and by whom paid, sending them each month to the Secretary of the Treasury through the collector's office

---

[1] "Know all men by these presents, that we, Wilbur Cooke, of Beaumont, Texas, as principal and the United States Fidelity & Guaranty Company, Baltimore, Md. as surety, are held and firmly bound unto Robert E. Latimer, the Collector of Customs for Collection District No. 21, and to his successors, in the sum of One Thousand No/100 dollars ($1000.00) for the payment of which, well and truly to be made, we bind ourselves, jointly and severally, our joint and several heirs, executors, administrators, successors and assigns, firmly by these presents.

"Sealed with our seals and dated this 15th day of August, 1916.

"The condition of the foregoing obligation is such that whereas the Secretary of the Treasury has appointed the said principal to the office of Deputy Collector of Customs in charge of the port of entry of Beaumont, Texas, in Customs Collection District No. 21:

"Now, Therefore, if the said Wilbur Cooke has truly and faithfully executed and discharged, and shall continue truly and faithfully to execute and discharge all the duties of the said office according to law, subject to such regulations as the Secretary of the Treasury shall prescribe and shall truly account for all moneys and property collected by or intrusted to him and shall save the said Collector of Customs harmless from any liability or damage incurred by him by reason of any wrongful act or omission of said principal, then the above obligation shall be void and of no effect; otherwise, it shall remain in full force and effect."

at Port Arthur. To the collector's office at Port Arthur he sent a daily report, consisting of copies of the vessels' manifests and a copy of the amounts collected for that day. Of this record three copies were made, one going to the bank, one to Port Arthur, and one to Washington.

Gunter testified that deputy collectors of customs at ports. of entry come into office under civil service, and remain unless guilty of some misconduct requiring dismissal. Deputies are appointed by the Secretary at the nomination of the collector of customs, who is required to nominate the man highest in the civil service list. Change in the office of collector does not affect the office of deputy collector. That he had no authority to discharge Cooke, but he could and did file charges against him. That the deputy collector's office in Beaumont, though a port in the district of which he is collector, and under his administrative jurisdiction, is in fact handled separately from the headquarters office, and he, Gunter, depended as to business transacted there, upon Cooke's reports. That he could, of course, have inspected Cooke's acts and checked the ships to see whether tonnage taxes were due, but Cooke handled these matters and sent the schedules on each vessel at the end of each month to Port Arthur, and they, with all collection vouchers, were then forwarded to Washington. That he had no right to receive the funds from Cooke; they were all to be deposited in banks as above. He testified, however, that the duties of his office embraced the collection of customs duties throughout the entire district, including Beaumont, and that Cooke was under his administrative jurisdiction in the sense that all of the district was under the administrative jurisdiction of the headquarters office of the collector for the district, and he further testified that though as collector he had general supervision over the district, he could not lawfully cash checks paid to him as collections; all he could do with checks or with funds that he collected was to deposit them, and Cooke, the deputy collector was under the same duty as to the collections he made.

Appellant concedes that if the duties Cooke performed were Gunter's duties, performed for him by Cooke, or if Gunter had received, or had the right to receive, the funds embezzled, he would be responsible under his bond. It insists that the duties breached were Cooke's not Gunter's; that Gunter never had the funds in his possession, nor any right to receive them; that he cannot, therefore, be held responsible for Cooke's failure to deposit and account for them.

Appellee insists as earnestly that the duties Cooke performed were Gunter's duties; that Gunter was obligated to and he did receive through Cooke the customs, dues and duties collected at Beaumont; and that through Cooke, Gunter failed in the performance of his duties, to deposit and account for the funds embezzled. That in short, in all that he did there Cooke was acting for and as Gunter, as collector of district 21, embracing and including Beaumont.

Whether appellant or appellee is right depends upon the proper understanding and construction of the statutes creating the office of collector, fixing its duties, and providing for their discharge, through officers and employees appointed by the Secretary on the collector's nomination. Appellee contends that under the reorganization of the customs service as authorized by the Act of August 24, 1912,[2] and the amendments thereto,[3] the collection of customs duties was provided for through customs collection districts, each in charge "of a collector of customs, officially designated by the number of the district for which he was appointed, and not by the name of the port where the headquarters are situated." It particularly contends that under this system for the discharge and administration of his duties, the collector is authorized to nominate, for appointment by the Secretary, such deputy collectors and other customs officers, laborers, and employees as he should deem necessary, the Secretary to prescribe their designation and duties where not otherwise defined by law. Under this system, while the Secretary makes the appointment, the collector nominates and designates for appointment, the persons so appointed are under his direction and control, and he is responsible to the United States for the performance by them for him of the duties the statute enjoins upon him. These duties, among others, are to receive the entries of all ships or vessels, and of the goods, wares, and merchandise imported in them, to estimate the

---

[2] 37 Stat. 434.

[3] The Acts of August 1, 1914, 38 Stat. 623; March 4, 1923, 42 Stat. 1453; Jan. 13, 1925, 43 Stat. 748; Title 19 U.S.C.A. §§ 1 to 37, inc.

amount of the dues payable thereon, and to receive all moneys paid for duties. These duties are to be discharged as provided for by statute and the customs regulations of the Treasury made under authority of law. Of these regulations the following are deemed material.

Article 1182 provides that the Secretary of the Treasury will appoint deputy collectors and prescribe their duties, when not otherwise defined by law; that they are officers of the customs and will perform the functions prescribed by law for collectors. Article 1183 authorizes deputy collectors in charge of ports of entry "under the general supervision and direction of the collectors, to enter and clear vessels, receive entries of merchandise, collect duties, and perform all other services prescribed by law, the regulations of the department, or the instructions of the collector; such deputy collectors to be bonded to the collector in a reasonable sum." Article 1078 provides that "at each port all collections * * * will be deposited daily by the collector at a headquarters port, or the deputy collector in charge at a port of entry in the name of the collector of the district, * * * Depositing officers located in a city or town where there is no depository must forward such receipts to the headquarters port or deposit in the designated depository in the district, as directed by the collector, when the aggregate collection amounts to $100."

On the basis of the statutes and regulations, and of the facts as to Cooke's having made bond to the collector, and having conducted his office as he did, appellee insists that Cooke though appointed by the Secretary, was responsible to the collector, and the collector was responsible for him.

Appellant, pointing to 34 Stats. 880, enacted February 6, 1907, authorizing the Secretary of the Treasury to appoint a deputy collector, and providing that "whenever [he] shall appoint a deputy collector at a port of entry where there is no collector, he shall designate the collector through whom such deputy shall report, but the bond of such deputy shall run to the Government, and the deputy shall be financially responsible directly to the Government," insists that, however Cooke was in fact appointed, under this statute he was not a deputy to the collector, but an officer holding directly under the government. That he was, in short, the holder of a separate and independent office for the performance of the duties of which as holder, he was responsible directly to the government, and not to the collector.

There is considerable contention between appellant and appellee as to whether this statute was repealed by later laws, particularly by the Act of August, 1912, under which the customs service was reorganized, and by the amendments to it. A study of the statutes does leave the matter in doubt. The absence of expressly repealing clauses, and the difficulty of determining whether a later statute so conflicts with a former as to repeal it by implication, makes it difficult to say whether this particular statute has been repealed or not. But I do not think this material, for I find it not inconsistent with statutes carried forward in the Code, as in force under the reorganization. Those statutes all provide for the appointment of deputy collectors by the Secretary, and there is a special statute, long in force, section 37, title 19 U.S.C.A., authorizing the Secretary, whenever in his opinion the public interest demands it, to clothe any deputy collector at a port other than the district headquarters, with all the powers of his principal appertaining to official acts, and to require such deputy to give bond to the United States for the faithful discharge of his official duties.

If Cooke had been appointed in this case as such special deputy, and a bond had been required of him to the United States, it might well be argued that such appointment created him an independent officer, for whose acts and duties the collector was in no sense responsible. But he was not so appointed. He was appointed as deputy to and under the collector, and he was required to, and did, make bond to the collector as such.

Thus appointed and thus acting, I think there is no doubt that for his defalcations in regard to the customs dues in question which it was the duty of the collector to receive through him as deputy, the collector and his bond are liable to the United States. Cleveland Columbus R. R. v. McClung, 119 U.S. 454, 462, 7 S.Ct. 262, 267, 30 L.Ed. 465, and Cooke and his bond are liable to the collector. Dignan v. Shields, 51 Tex. 322.

In the Cleveland Case, where the deputy had been appointed by the collector under an earlier statute, with the approval of the Secretary instead of as now, appointed by the Secretary upon nomination of the collector, it is said:

"There can be no doubt that the collector is answerable for all the acts of his deputies

in the performance of their official duties under him. The real question here is, therefore, whether the collection of the carrier's charges was a part of the official duty of the collector. If it was, the collection by the deputy was an official act, and the principal officer is liable accordingly."

In the Dignan Case, the liability of the collector and of the surety on the collector's bond was sustained, and they were required to account for moneys collected by a deputy collector, who had been appointed in the same way by the collector.

Appellant argues that under the present statutes the collector and the deputy collector stand differently to each other. I do not think so. No change of substance in the relation between the collector and his deputy has occurred. The only change is in the manner of their appointment. That this is so is made manifest by the customs regulations. That this is so is made more manifest by Cooke's act in giving a bond to the collector, and by the testimony which shows beyond question that the duties performed by Cooke at Beaumont, were the duties of the collector, performed by Cooke for him, and under his supervision and control. Appellant cites as directly in support of its position, only United States v. Collier, 25 Fed. Cas. p. 527, No. 14,833, an action on a collector's bond on which recovery was denied for moneys stolen from a deputy collector, without neglect or default on the part of the collector or his deputy. The court, Betts, District Judge, and Nelson, Circuit Justice, decided that, since the collector had no other connection with the deputy than to propose him to the Secretary for his approbation, had no right to remove or control him, and the 4th section of the Act of March 3, 1849 (9 Stat. 400), secured for the deputy a compensation independent of the collector, and gave him, in his section of the district, the same standing in respect to fees and commissions as the collector had at San Francisco, this would rather render the deputy collectors in California agents of the government, than of the collector personally. But the real ground of the decision appears later in the finding that "even if the defendant stands in law responsible for the conduct and liability of the deputy, and is to be regarded as the holder for the benefit of the United States of the purloined funds, still it being found by the verdict of the jury that the moneys were stolen, defendant would be exonerated from all liability for them," but see contra, Boyden v. United States, 13 Wall. (80 U.S.) 17, 20 L.Ed. 527, Smythe v. U. S., 188 U.S. 156, 23 S.Ct. 279, 47 L.Ed. 425. This case was appealed and affirmed by a divided court without opinion. It is therefore without weight as a precedent for appellant's position.

The United States relies upon the general principles that the duties prescribed by statute are as much a part of the condition of the bond as if they were written therein, that the bondsmen of an officer are liable for moneys lost or embezzled by his deputies or clerks, and that receivers of public moneys are held to a strict accountability. Smythe v. United States, Boyden v. United States, supra. It relies, too, on Pond v. U. S. (C.C.A.) 111 F. 989, a suit on an internal revenue collector's bond, conditioned, for the faithful performance of the duties as well of the deputy as of the collector, and on United States v. Bryan (C.C.) 82 F. 290, 292, a suit upon a post master's bond for moneys embezzled by his clerk.

None of the cases cited are precisely in point. All were decided under different laws and regulations, and under different facts, from those here under review. Except, as in their application of principles, they indirectly point the way, they are without controlling force. They bear, however, I think, in favor of liability in this case. Indeed, under the circumstances of Cooke's original appointment, including particularly his giving bond to the collector, and the way and manner in which the collection duties at the Beaumont office were discharged by him, under the supervision and direction of the collector, it seems quite plain to me that it cannot be reasonably said that the duties he performed there were not the duties of the collector, and that the responsibility for moneys collected by him there was not the collector's.

I think the judgment was right, and should be affirmed.